**Harry SMITH et al., Appellees,**

v.

**Dawn SMITH et al., Appellants.**

**No. 75–1478.**

United States Court of Appeals, Fourth Circuit.

Argued June 11, 1975.

Decided Aug. 26, 1975.

Certiorari Denied Jan. 19, 1976. See 96 S.Ct. 856.

Phillip C. Stone, Harrisonburg, Va. (Glenn M. Hodge, Wharton, Aldhiser & Weaver, Harrisonburg, Va., on brief), for appellants Wayne E. King, Superintendent, Robert Horst, Principal, Members of Bd. of Ed., all of Harrisonburg City Public Schools.

Edgar A. Prichard, Fairfax, Va. (James M. Lewis, Fairfax, Va., on brief), for appellants Rockingham Council of Week-Day Religious Ed.

Robert P. Dwoskin, Richmond, Va., for appellees.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

The district court held unconstitutional and enjoined the enforcement of the Harrisonburg, Virginia, release-time program whereby public school students are released during school hours for religious instruction by the Rockingham Council of Week-Day Religious Education (WRE). We think that controlling Supreme Court authority requires the opposite result. We reverse and direct dismissal of the complaint.

I.

WRE is a nonprofit organization supported by the Virginia Council of Churches. It has been providing religious instruction in Harrisonburg since 1923. For forty years, the teaching took place in school classrooms. Since 1963, WRE classes have been held in trailers parked on streets adjacent to the schools or in nearby churches.

The challenged program operates in three elementary schools. WRE obtains the schools' enrollment lists and mails cards to the parents asking if they consent to their children's participation in the program. The children deposit the cards at school; WRE collects them and informs the school which children should be released. Public school officials do not encourage the children to attend WRE classes. WRE officials do not enter the schools to solicit students.

Twenty-seven classes of children receive approximately one hour of WRE instruction a week. The public school principals and WRE officials work together to coordinate their schedules. Each WRE class is drawn from a regular school class; children who do not participate remain in the classroom but the teacher does not provide formal instruction for this small minority of the class.

Although it concluded that the program was invalid, the district court admitted that the Harrisonburg release-time program is "not readily distinguishable" from the New York City program which the Supreme Court held constitutional in *Zorach v. Clauson*, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952). It held, however, that *Zorach* was "not necessarily dispositive" in view of the Supreme Court's adoption of a tripartite test for applying the Establishment Clause:[1] the challenged state action is valid if it has a (1) secular purpose,[2] (2)

---

1. The test was most recently stated in *Meek v. Pittenger*, 421 U.S. 349, at 358, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975). *See also Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

2. *See, e.g., Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) in which the Court held invalid an Arkansas statute prohibiting the teaching of Darwinism. The Court condemned the statute because it was not religiously neutral but instead was part of an attempt to "blot out a particular theory because of its supposed conflict" with the Bible. 393 U.S. at 109, 89 S.Ct. 266.

its primary effect neither advances nor inhibits religion,[3] and (3) it does not excessively entangle the state with religion.[4] Applying this test, the district court found the Harrisonburg release-time program unconstitutional, because its effect was found to advance the WRE's religious training.

## II.

The Supreme Court's two release-time decisions to which we must look are *Illinois ex rel. McCollum v. Board of Education*, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), which invalidated a Champaign, Illinois, program, and *Zorach v. Clauson*, supra, which reached the opposite result as to a New York City program. The cases have never been repudiated, although neither the Court nor commentators have wholly succeeded in harmonizing them. *See* Note, The "Released Time" Cases Revisited: A Study of Group Decisionmaking by the Supreme Court, 83 Yale L.J. 1202, 1228–33 (1974). In shaping the modern tripartite test, the Court has not rejected its early Religion Clauses cases, but instead has purported to distill them.[5] Our task, therefore is to apply the modern test in a fashion consistent with the results in *McCollum* and *Zorach*. We turn first to *McCollum* and *Zorach*.

In *McCollum*, the religious instructors took over the public school classrooms; nonparticipating students went elsewhere in the building. The school approved of the religious instructors and participated in recording the attendance of students in the religious instruction classes. This scheme was held unconstitutional.

In *Zorach*, the school system simply released students during the school day upon written request of their parents. These students attended religious classes off the school premises. The schools received reports of the children's attendance at these classes.

The majority opinion by Mr. Justice Douglas in *Zorach* offered three possible distinctions between this program and the one invalidated in *McCollum*. The *Zorach* program involved [1] "neither religious instruction in public school classrooms [2] nor the expenditure of public funds." 343 U.S. at 308–09, 72 S.Ct. at 681. In *McCollum*, on the other hand, "the classrooms were used for religious instruction and [3] the force of the public school was used to promote that instruction." 343 U.S. at 315, 72 S.Ct. at 684. The second and third distinctions seem, in fact, to depend on the first and crucial distinction:[6] in *McCollum*, the

**3.** This part of the test was developed and applied in *Abington School District v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), in which the Court held unconstitutional school prayers. See also its application in *Board of Education v. Allen*, 392 U.S. 236, 243, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), in which the Court validated a free textbook program which included parochial schools.

**4.** The "entanglement" concept was developed in *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), holding constitutional tax exemptions to religious organizations.

**5.** In *Meek v. Pittenger*, 421 U.S. 349, at 358, 95 S.Ct. 1753, 1760, 44 L.Ed.2d 217 (1975), the Court said the three tests "constitute a convenient, accurate distillation of this Court's efforts over the past decades to evaluate a wide range of governmental action challenged as violative of the constitutional prohibition against laws 'respecting an establishment of religion,'

and thus provide the proper framework of analysis for the issues presented in the case before us."

*In Committee For Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756, 772, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973), the Court said "the now well-defined three-part test that has emerged from our decisions is a product of considerations derived from the full sweep of the Establishment Clause cases."

**6.** This point is made in Note, "The 'Released Time' Cases Revisited: A Study of Group Decisionmaking by the Supreme Court," 83 Yale L.J. 1212, 1230 (1974). The expenditure of public funds in *McCollum* consisted of little more than the loan of the school classrooms to the religious instructors.

The "force of the public school" was used to promote the religious instructions also primarily because the classrooms were turned over to the religious instructors. Since the students were compelled by law to attend school, they were therefore compelled at least to be in

public school turned its classrooms over to the religious instructors; in *Zorach*, the schools only adjusted "their schedules to accommodate the religious needs of the people." 343 U.S. at 315, 72 S.Ct. at 684.[7]

In the instant case, the accommodations of the school program to religious training were generous and thorough-going, but the public school classrooms, where the students were compelled by state law to be, were not turned over to religious instruction. Therefore, the case is indistinguishable from and controlled by *Zorach*. Under it, the Harrisonburg release-time program must be constitutional.

### III.

If we were to decide this case solely by direct application of the tripartite test recently restated in *Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), we would be inclined to agree with the district court's overall conclusion that the Harrisonburg release-time program is invalid. The district court did not find that the first and third parts of the test were violated. In this, it was correct.

The purpose of the Harrisonburg release-time program, like the *Zorach* program, is secular—the schools aim only to accommodate the wishes of the students' parents. Nor does the Harrisonburg program involve more entanglement between the school administration and the

religious authorities than was present in the *Zorach* program.

With respect to the effect of the program's advancing or inhibiting religion, the district court found that the necessary effect of the cooperation between the public school officials and the WRE is to "create an impression of an indorsement of the program and in so doing obscure any distinction between the religious and secular classes and teachers." Moreover, the program is directed toward elementary school children, and they are more likely to be susceptible to this "impression of . . . indorsement." Therefore, the district court reasoned, the principal or primary effect of the cooperation which it enjoined is to advance WRE's program. Under the second part of the modern test, it concluded, the program is unconstitutional.

Although the district court's reasoning is persuasive,[8] its opinion was filed before *Meek* was decided. In *Meek* the Court expressly cited *Zorach* as viable authority. 421 U.S. at 359, 95 S.Ct. 1753. Although *Zorach* was decided many years before the Court fashioned the tripartite test, the *Meek* citation indicates that *Zorach* is not inconsistent with the tripartite test. Indeed, *Zorach* illuminates the test. Therefore, it is our duty to follow *Zorach* and to understand the modern test in the light of *Zorach's* continuing viability. *McCray v. Burrell*, 516 F.2d 357, at 365 (4 Cir. 1975), cert. filed (1975).

The necessary effect of the release-time program in *Zorach* must have been

---

school when the religious instructors arrived. They could leave the classroom, but to some extent the law encouraged their participation in the religious education. Concurring in *Abington School District v. Schempp*, 374 U.S. 203, 230, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), Justice Brennan refined the argument: "[T]he McCollum program placed the religious instructor . . . in precisely the position of authority held by the regular teachers of secular subjects, while the *Zorach* program did not. The *McCollum* program, in lending to the support of sectarian instruction all the authority of the governmentally operated public school system, brought government and religion into that proximity which the Establish-

ment Clause forbids." 374 U.S. at 262–63, 83 S.Ct. at 1592.

7. In *Zorach*, Justices Black, Frankfurter and Jackson dissented and filed separate opinions. All took the position that *McCollum* was indistinguishable. The opinion of Justice Jackson eloquently and persuasively argued that the state exercised compulsion to further sectarian religious education, notwithstanding that actual instruction did not take place in the classrooms of public schools, but his views were rejected.

8. See n. 7.

much the same as the effect which the district court discerned in the instant case. Since *Zorach* is still good law, it must be that this effect is indirect or incidental rather than principal or primary. As the Court has recently reasserted, with a citation to *Zorach*, "not all . . . programs that provide indirect or incidental benefit to a religious institution are prohibited by the Constitution." *Meek v. Pittenger*, 421 U.S. 349, at 359, 95 S.Ct. 1753, 1760, 44 L.Ed.2d 217 (1975).

We take this language to mean that the primary effect of the public school's release-time program in *Zorach* must be seen as simply the innocuous diminishing of the number of children in school at a certain time of day. According to this view, public school cooperation with the religious authorities in *Zorach* and the instant case is a largely passive and administratively wise response to a plenitude of parental assertions of the right to "direct the upbringing and education of children under their control." *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). *See also Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). With these premises, our conclusion must be that the Harrisonburg public school's cooperation with the WRE program by itself does not necessarily advance or inhibit religion. Therefore, the Harrisonburg release-time program is not unconstitutional, under the modern test, as understood in the light of *Zorach*'s apparent continuing validity.

### IV.

The judgment of the district court must be reversed and it should dismiss the complaint.

*Reversed.*